[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The defendant, Thomas Davis, filed a "Petition to Review Acknowledgment and Vacate Judgment of Paternity" on March 8, 1991. The judgment of paternity was entered by the Court on March 16, 1988. The defendant claims that he is automatically entitled to have the judgment reopened and set aside under Conn. Gen. Stats. 46b-172 (b), since his petition was filed CT Page 6238 within three years of the date of the judgment of paternity. The defendant further claims that he is a member of the "protected class" under the case of Stone v. Maher,527 F. Supp., p. 10 (1980).
It is conceded by the plaintiff that the petition was filed within three years of the date of the judgment of paternity. However, the plaintiff claims that the defendant is not automatically entitled to have the judgment reopened and set aside, simply because it was filed within the three-year time limit. Plaintiff claims that defendant must follow the procedure set forth in Conn. Gen. Stats. 52-270 for a petition for a new trial to be granted. The defendant failed to follow the procedure under 52-270. Furthermore, the defendant concedes that he does not fall within any of the categories for the granting of a petition for new trial under that statute.
This court finds that the defendant's petition to reopen and vacate the judgment of paternity should not be granted. There have been statutory and procedural changes since the time of the case of Stone v. Maher, Id., which have corrected any due process of law problems as delineated by the Stone court. See Delgado v. Martinez, 25 CA 155, 157-58 (1991).
Facts
On or about March 11, 1988 the defendant, Thomas M. Davis, signed an acknowledgment of paternity form together with an "Agreement to Support" form. On March 16, 1988 these forms were filed with the Superior Court for the Judicial District of Hartford, together with a pro se appearance form signed by Mr. Davis and by the plaintiff, Sharon Pagani. At the same time, Attorney William Wholean, an assistant attorney general for the State of Connecticut filed an appearance to protect the interests of the state.
In reviewing the file, I find that there is a note in the file that the Agreement to Support was rejected by the family support magistrate, because he apparently felt there were three problems with the agreement. First of all, his notes in the file indicate that he felt the support figure was possibly too low in view of the putative father's income. Secondly, he was concerned that there were no orders concerning medical coverage for the minor child. And finally, he was concerned that there were no orders for a wage garnishment.
The case was continued to April 13, 1988 for a hearing to determine the amount of the support and both parents were ordered to appear at that time. The case was then further CT Page 6239 continued to May 2, 1988, when both parties actually appeared in court. At that time, orders were entered by the family support magistrate, Harris Lifschitz, based upon the agreement of the parties. An order of $140 bi-weekly in support payments was ordered, secured by an immediate wage garnishment. The orders were entered retroactively to March 18, 1988. The petitioner was ordered to obtain medical insurance coverage for the benefit of the minor child as available through her employer. The respondent never raised any question as to the paternity of the child.
The respondent signed an Advisement of Rights form concerning the wage execution, which was witnessed by the assistant attorney general, Elizabeth Scanlon. The support order was later modified by subsequent action of the family support magistrate. On February 19, 1991 the family support magistrate issued a lengthy memorandum of decision in which Mr. Davis' child support payments were dramatically increased from $70 per week ($140 bi-weekly) to $178 per week. Mr. Davis, through counsel, appealed that decision on March 4, 1991. Within days of filing that appeal, Mr. Davis' counsel filed the petition to vacate the judgment of paternity which is now under consideration by this court. The latter petition was dated March 8, 1991 and filed with the court on March 11, 1991.
As indicated previously, the original acknowledgment of paternity was filed with the court on March 16, 1988, which is therefore the date of judgment of paternity. Under C.G.S.46b-172 a written acknowledgment of paternity, once filed with the court becomes the equivalent of a judgment of paternity.
A similar procedure was followed in the Stone v. Maher case, which the District Court found to be unconstitutional as a violation of due process of law. The basic reasoning of the decision was that the defendant in Stone was not made aware of his right to contest the paternity by court action. In Stone v. Maher, the court indicated that the defect could be cured if there was a formal hearing before the court to alert the putative father that a judgment of paternity might be entered against him based upon his signing of an acknowledgment of paternity and that serious legal responsibilities would flow from the judgment. Id., at 17.
However, the court did not indicate that this would be the exclusive procedure to be followed in order to overcome the Due Process problem.
In reviewing the file of Pagani v. Davis, I have CT Page 6240 discovered a copy of a signed document in the file which is dated June 18, 1987, which was several months before Mr. Davis signed the acknowledgment of paternity. That form is entitled "Department of Human Resources, Information About the Acknowledgment of Paternity." A copy of that document is attached to this decision as Exhibit "A."
In that document, there are five paragraphs which set forth in clear language the ramifications of signing an acknowledgment of paternity and the legal obligations that would flow from signing that acknowledgment of paternity. That document also clearly indicates that the person signing as father of the child is not required to do so. Rather, it indicates that he could refuse to admit paternity and have a trial, at which time he could be represented by an attorney. The form also indicates that the person signing has a right to speak to an attorney before signing the acknowledgment of paternity. Since that document is in the court file, the court takes judicial notice of it. The court also draws a reasonable inference from the signing of that document that Mr. Davis knew his rights concerning the signing of an acknowledgment of paternity, well in advance of signing the actual acknowledgment of paternity form on March 11, 1988.
The court also notes for the record that Mr. Davis appeared in court with his present counsel, Mr. Amato, at the hearing on this petition. At that time it was quite obvious Mr. Davis is an intelligent person, who clearly would understand the ramifications of the documents which he signed.
There are two cases in Connecticut that have been reported since the Stone v. Maher case which are nearly on all fours with the present case. The first is the Perkins v. Perkins matter, 3 CA 322 (1985). In the Perkins case the court found that Mr. Perkins was represented by counsel in his divorce case, the issue of paternity could have been litigated but he chose not to do so. The Appellate Court assumed, that Mr. Perkins was aware of the consequences of his decision based solely on the fact that he was represented by counsel. In the Perkins case, there was nothing in the record to indicate whether or not Mr. Perkins signed a document similar to Exhibit "A", as evidence that Mr. Perkins knew of his legal rights.
The next case on point is the Bleidner v. Searles, 19 CA 76 (1989). In Bleidner v. Searles, the situation is nearly identical to the facts in Pagani v. Davis. The only difference is that Bleidner was apparently represented by counsel throughout the paternity proceedings. He did, however, sign a written acknowledgment which was filed with the court, CT Page 6241 thus becoming a judgment of the court. Bleidner asked that the judgment be set aside, based simply on the fact that he was a member of the protected class of Stone v. Maher, without any other specific circumstances. The court dismissed his petition to set aside the judgment of paternity, finding that he had ample opportunity to litigate the issue and that he was obviously aware of his rights, since he was represented by counsel. Once again, there is no clear indication that any additional documents, such as Exhibit "A", were signed by Mr. Bleidner in that case. The only difference between the Bleidner case and the present case is that Mr. Bleidner was represented by counsel throughout the proceedings.
After the Perkins and Bleidner decisions, if this court were to rule that a paternity defendant is automatically to have the finding of paternity set aside if he files his petition within 3 years, (in accordance with C.G.S.46b-172 (b) ), a very strange result would occur. A putative father who does not understand the proceedings, but is represented by counsel, could not have the paternity judgment set aside, without a showing of fraud or mutual mistake. A putative father who appears pro se and understands all his rights and obligations, could acknowledge paternity and "test the waters" regarding his support obligations. If he does not like the support order, he could simply file a petition to vacate the paternity judgment and start the process de novo. A shrewd lawyer would advise a putative father to first appear "pro se", rather than being represented by counsel. The law should not be construed to reach absurd results.
There are two other ways this problem could be addressed. One way is to require every putative father to appear in court to be "canvassed" by a Support Magistrate or a judge. If the legislature intended this to be done, it would have been specified in the statute. It is not. C.G.S. 46b-172(b). If the judges of the Superior Court felt this was appropriate, they would have required it through a Practice Book Rule. No such rule exists. If the District Court felt it was necessary, it would have been set forth in Stone v. Maher. It was not.
The second way to deal with this issue, is to require that every putative father have court-appointed counsel. There is no rule of court, statute, or reported decision that requires counsel to be appointed for every putative father. Obviously, a putative father can appear pro se, if he chooses, without a violation of his constitutional rights.
Once again, however, I point out that Mr. Davis, an obviously intelligent man, signed the information sheet CT Page 6242 concerning his legal rights relative to an acknowledgment of paternity, he appeared pro se in the court action, and he physically appeared in court less than two months after the original acknowledgment of paternity was filed with the court in March 1988. At no time had he ever raised the question of paternity, although he was obviously aware of his rights to do so throughout the proceedings. This court finds it somewhat curious that Mr. Davis filed this petition to vacate the judgment four days after he filed an appeal from the decision of the family support magistrate, modifying his support payments by dramatically increasing the payments.
It is clear to this court that Mr. Davis is using this petition to vacate the paternity judgment for leverage in connection with the appeal from the decision of the family support magistrate. This court feels this tactic by the petitioner is inappropriate, and very questionable on the part of petitioner's attorney. This feeling is further reinforced, since I asked petitioner's attorney, on the record, if he wanted me to grant his motion for HLA testing and blood grouping, (which he filed together with the petition for a new trial) if I were to grant the petition. His attorney indicated that they were not necessarily pressing that motion for blood grouping and HLA testing.
This court feels that based upon the signed information sheet in this file, (Exhibit "A"), and the fact that Mr. Davis represented himself and actually appeared in court within two months of the acknowledgment first being filed with the court, that Mr. Davis was afforded ample opportunity to be heard in this case. He was also advised of his rights to speak to an attorney, before signing an acknowledgment of paternity, to deny paternity if he chose to, and to have a trial on the issue of paternity and be represented by counsel at that time. Furthermore, he was clearly advised of his legal obligations evidenced by Exhibit "A". Therefore, this court does not find that Mr. Davis was denied due process of law in connection with the signing of an acknowledgment of paternity which was filed with the court and became a judgment of the court.
Furthermore, based upon the findings of this court that the defendant improperly filed this petition for a new trial, simply to use the petition as leverage in connection with the appeal of the decision of the family support magistrate, the court is going to award counsel fees to the plaintiff.
Pursuant to plaintiff's motion of March 14, 1991 (#109), the court orders the defendant, Thomas Davis, to pay to the plaintiff the sum of $500 toward her counsel fees incurred in connection with this petition to vacate the judgment of CT Page 6243 paternity. Payment shall be made on or before August 12, 1991.
Based upon the most recent financial update which the defendant has in file, he has ample liquid assets to pay counsel fees for the plaintiff. The plaintiff on the other hand has limited liquid assets. The plaintiff has been required to expend extraordinary sums for counsel fees in connection with this particular petition to vacate the judgment of paternity, because briefs had to be filed and counsel had to appear in court for argument. The court also feels that the petition was not filed in good faith, and any prior orders this court in favor of the plaintiff for child support will simply be diminished if she must pay counsel fees, unless the defendant is ordered to contribute partial reimbursement toward her counsel fees. Certainly, the child should not be deprived of support because the defendant has chosen to file this petition for a new trial at this late date.
Therefore, the defendant's petition for a new trial is denied. The finding of paternity is res judicata in this case. C.G.S. 46b-172. Defendant to pay plaintiff, $500 on or before August 12, 1991 as contribution toward her attorney's fees.
SO ORDERED
JONATHAN J. KAPLAN
 STATE OF CONNECTICUT DEPARTMENT OF HUMAN RESOURCES
INFORMATION ABOUT THE ACKNOWLEDGMENT OF PATERNITY
1. An "acknowledgment" of paternity means that you admit that you are the father of the child(ren). Once you admit you are the father of the child(ren), and you sign an acknowledgment of paternity, and the acknowledgment is filed with the Court, according to State law it has the same force and effect as if you had a paternity trial and the judge decided you were the father.
2. If you are the father of the child(ren), by signing an acknowledgment of paternity you will be giving to the child(ren) many rights and benefits such as social security or veteran benefits, and the right of inheritance.
3. Before you sign an acknowledgment of paternity you have a right to speak to an attorney.
4. If you are not sure that you are the father of the child(ren), you do not have to acknowledge paternity. You have the right to refuse to admit paternity and to have a trial at which you could be CT Page 6244 represented by an attorney.
5. If you acknowledge that you are the father of the child(ren), you are liable as a parent for the support of the child(ren) until the child(ren) is 18 years old. Failure to provide for the support of your child(ren) may result in civil proceedings or criminal prosecution, and in such cases the court can order a wage execution.
I, Thomas M. Davis, have read, or have had read to me, the above statements and I understand its contents. A copy of this statement has been given to me.
Thomas M. Davis /s/ 6-18-87 Signature Date
CERTIFICATION:
I certify that I gave a copy of the foregoing to Thomas M. Davis on 6-18-87.
[ ] He read the information himself.
[x] I read the contents of the foregoing to him.
John Bell 6-18-87 IV D Child Support Investigator/Family Date Relations Officer
_______________________________ _______ Interpreter Date